**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| RONDA WILKINS AND ED WILKINS | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIENDS OF TRIXIE WILKINS, | § | |
| A MINOR, | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | A-04-CA-652 RP |
| | § | |
| ACE AMERICAN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Motion for Summary Judgment of Defendant Ace American Insurance Company, filed November 1, 2006 (Clerk's Dkt. #18); Plaintiffs' Amended Response to Defendant's Motion for Summary Judgment, filed March 3, 2006 (Clerk's Dkt. #38), Plaintiffs' Motion for Partial Summary Judgment, filed February 28, 2006 (Clerk's Dkt. #33), Defendant Ace American Insurance Company's Response to Plaintiffs' Motion for Partial Summary Judgment, filed March 13, 2006 (Clerk's Dkt. #40), and Plaintiff's Reply to Defendant Ace American Insurance Company's Response to Plaintiff's Motion for Partial Summary Judgment, filed March 17, 2006 (Clerk's Dkt. #42).

**I.  BACKGROUND**

This suit arises from injuries suffered by Plaintiff Ronda Wilkins when she was involved in an automobile accident on March 1, 2002.  (Pl. First Am. Compl. ¶ 9).  Plaintiff Ed Wilkins is Ronda Wilkins' husband, and they are the natural parents of Plaintiff Trixie Wilkins, a minor.  (*Id*. at ¶ 1).  Plaintiff Ronda Wilkins alleges that she suffered severe and permanent injuries when an underinsured motorist, Christopher Varela ("Varela") ran a red a red light and crashed into her when she was traveling northbound on an I-35 frontage road.  (*Id*. at ¶¶ 9-10).  Plaintiffs assert

that Varela was an underinsured motorist because his liability insurance limits were insufficient to compensate them to the full extent of their damages.  (*Id*. at ¶ 27).

At the time of the accident, Ronda Wilkins was driving a Volvo C-70 convertible owned by Roger Beasley Volvo.  (*Id*. at ¶ 11); (Pls.' Mot. Summ. J., Ex. 16 ("R. Wilkins Aff.") ¶ 3).  The car was to be driven in the Celebrate Texas and Star of Texas Fair & Rodeo Parade.  (R. Wilkins Aff. ¶¶ 2-3).  Plaintiffs allege that Star of Texas Fair & Rodeo ("Star of Texas"), a non-profit organization, entered into a joint enterprise with Celebrate Texas, also a non-profit organization, for the purposes of their annual parade.  (Compl. at ¶¶ 15-16).  Ronda Wilkins was a volunteer for Celebrate Texas and Star of Texas Parade in 2002.  (R. Wilkins Aff. ¶ 2).  Ed Wilkins was  Ed Wilkins was on the board of directors of Celebrate Texas Independence Day, Inc.  (Pls.' Mot. Partial Summ. J., Ex 11 ("E. Wilkins Aff.") ¶ 2).

Plaintiffs have obtained policy limits settlements from the underinsured motorist coverage of Roger Beasley Volvo as well as from their own Allstate automobile insurance policy but assert that they have not been fully compensated for their damages.  (Compl. at ¶ 27). Plaintiffs allege that at the time of the accident Ronda Wilkins was also covered by insurance policy number CAL H07993067 issued to Star of Texas by Defendant Ace Insurance Company ("Ace").  (*Id*. at ¶ 24).  The policy was effective from March 1, 2002 through March 1, 2003.  (Def.'s Mot. Summ. J., Ex. A).  Plaintiffs further assert that the Volvo was leased to Star of Texas.   (Compl. at ¶ 31).  According to Plaintiffs, Defendant Ace has failed to pay benefits due and owing under the terms of the insurance contract.  (*Id*. at ¶ 27).

In addition to their coverage claim, Plaintiffs allege that Defendant has violated Texas Insurance Code § 21.55 by failing: (1) to investigate or request information about the claim, (2) timely accept or reject the claim, or (3) pay the claim.  (*Id*. at ¶ 38).  Plaintiffs also assert that Ace breached its duty of good faith and fair dealing by denying payment of benefits under the insurance contract when it knew or should have known that coverage was reasonably clear.  (*Id*.

at ¶ 42).  Plaintiff Ronda Wilkins seeks damages for medical expenses, pain and suffering, physical impairment, disfigurement, and loss of earning capacity.  (*Id*. at ¶ 44).  Plaintiff Ed Wilkins seeks damages for loss of affection and loss of household services.  (*Id*. at ¶¶ 45-46).  Plaintiff Trixie Wilkins seeks damages for loss of affection.  (*Id*. at ¶ 47).  Plaintiffs also seek reasonable fees and costs.

Defendant filed a motion for summary judgment contending that Ronda Wilkins was not insured under the policy at issue.  Plaintiffs have filed a motion for partial summary judgment requesting the court to find that: (1) Star of Texas and Celebrate Texas were engaged in a joint venture to conduct their 2002 parade, (2) the automobile that Ronda Wilkins was driving at the time of the crash was provided as a lease, (3) the uninsured/underinsured ("UM/UIM") endorsement insured automobiles leased by Star of Texas, (4) Ed Wilkins was an agent of Star of Texas for planning and organizing the parade, (5) Ronda Wilkins was an agent of Star of Texas in picking up and driving the automobile for Star of Texas, (6) Ronda Wilkins is an insured because she was occupying a covered automobile at the time of the crash, and (7) Ronda Wilkins is an insured under the policy.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

The undersigned will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 110, 122 (1993).  The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Id.*

## IV. ANALYSIS

The issue is whether Plaintiff Ronda Wilkins is covered by insurance policy number CAL H07993067 ("Policy").  The named insured on the Policy was "Star of Texas Fair and Rodeo" and it was effective from March 1, 2002 through March 1, 2003.  (Def.'s Mot. Summ. J., Ex. A).  The UM/UIM endorsement states that an insured is:

> 1. You and any designated person and any family member of either.
> 2. Any other person occupying a covered auto.
> 3. Any person or organization for damages that person or organization is
> entitled to recover because of bodily injury sustained by a person described in
> 1. or 2. above.

(*Id.*)  "You" and "your" refer to the named insured shown in the Declarations. (*Id.*)  Plaintiffs claim that the Volvo C70 Ronda Wilkins was driving was a "covered auto" under the policy.  Plaintiffs further asserts that Ronda Wilkins was an insured under the first classification of an insured, as

noted above, in the UM/UIM policy.  The undersigned first examines whether the Volvo C70 was a "covered auto" under the policy and then examines whether Ronda Wilkins was an insured pursuant to the first classification of an insured under the UM/UIM policy.

The general rules of contract construction govern insurance policy interpretation. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).  If an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984); *See National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995); *see also Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977).   However, a contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Columbia Gas*, *Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *CBI Indus.*, 907 S.W.2d at 520.  In determining whether a contract is ambiguous, the contract as a whole must be examined.  *Columbia Gas*, 940 S.W.2d at 587. An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994); *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727 (Tex. 1981).

**A.  Was Ronda Wilkins in a Covered Auto?**

In their motion for summary judgment, Defendant argues that for purposes of the UM/UIM portion of the policy "covered auto" included autos actually owned by Star of Texas.  In support of this argument, Defendant cites to the UM/UIM endorsement form.  On that form, the named insured selects a description for covered autos.  (Def.'s Mot. Summ. J., Ex. A).  Star of Texas the named insured, selected the description for covered autos which stated "[a]ny auto owned by you." (*Id.*)  Because the Volvo C70 was not owned by Star of Texas, Defendant argues that it is not a "covered auto" under the policy.

Plaintiffs cite to the Business Auto Coverage Form which defines "owned autos" as "[o]nly those autos you own (and for Liability Coverage any trailers you don't own while attached to the power units you own).  This includes autos you acquire ownership of after the policy begins."  (*Id*.)  The Business Auto Coverage Form defines "nonowned autos" as "[o]nly those autos you do not own, lease, hire, rent or borrow that are used in connection with your business."  (*Id*.)  By implication, Plaintiff argues that "owned autos" includes autos that are owned, leased, hired, rented or borrowed.  *See id*.  However, the UM/UIM policy defines a "covered auto" as an auto that is:

> a. owned or leased by you or
> b. while temporarily used as substitute for an owned covered auto that has been withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

*Id*.  If an "owned auto" included autos that were leased, hired, rented or borrowed, as Plaintiffs argue, then the definition of a "covered auto" would be redundant because the definition of owned auto already includes leased autos.  Interpreting the insurance policy to give it a reasonable meaning to all provisions as opposed to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable, the undersigned finds that an owned auto does not include an auto that is leased, rented, hired, or borrowed.[1]  *See Liberty Mut. Ins. Co. v. American Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1977).

However, the undersigned does not agree with Defendant that "covered autos" only include vehicles that are owned by Star of Texas.  As discussed, the UM/UIM endorsement defines "covered autos" as being those vehicles owned or leased by the named insured.  Defendant argues that Star of Texas, the named insured, selected the description for covered autos in the

---

[1] Defendant also notes that in order to include a borrowed car in its insurance policy, it would add them by way of a "General Change Endorsement."  *See* (Def.'s Resp. Mot. Partial Summary Judgment, Ex. 2-3).  If borrowed cars were already covered under the policy, Defendant argues, it would not be necessary to add them in through the General Change Endorsement.

UIM/UM policy which stated "[a]ny auto owned by you." (*Id.*)  However, the General Manager of Star of Texas, Bucky Lamb ("Lamb") testified that Star of Texas did not own any vehicles.  (Pls.' Mot. Partial Summ. J., Ex. 9 ("Lamb Dep.") 27:5-11).  Further, to the extent that the UM/UIM policy could be read to be ambiguous as to whether it covered only owned autos or both owned or leased autos, the undersigned reads the policy in favor of extending coverage. *Kelly Assocs.*, 681 at 596.  As such, the undersigned interprets the definition of "covered auto" in the UM/UIM policy to include vehicles owned and leased by Star of Texas.

It is undisputed that the Volvo C70 at issue was not owned by Star of Texas.  (Lamb Dep. 27: 5-11).  Plaintiffs argue that they should be granted partial summary judgment because the vehicle was leased to Star of Texas from Roger Beasely Volvo.  If there was a lease, it appears that such a lease was an oral lease, as neither party has provided any evidence of a written lease agreement.  In citing *Griffin v. Travelers Indem. Co. of Rhode Island*, 4 S.W.3d 915, 918 (Tex. App.–Dallas 1999, pet. denied), the parties agree that for there to be a valid lease: (a) the lessee must be given the exclusive use and control of the vehicle and (b) the lessor receives consideration. *See* BLACK'S LAW DICTIONARY 898 (7th ed. 1999) ( a "lease" is "a contract by which the rightful possessor of personal property conveys the right to use that property in exchange for consideration").

Plaintiffs argue that Ronda Wilkins was given the exclusive use and control of the Volvo C70.  In support, they cite to an affidavit from David Stein ("Stein"), the owner of Roger Beasely Volvo in which he avers, "Roger Beasely Volvo provided to Star of Texas and Celebrate Texas a 2001 Volvo C70 Convertible for their exclusive use and control from March 1, 2002, through March 2, 2002, for use in their parade." (Pls.' Resp. Mot. Summ. J., Ex. 5 ("Stein Aff") ¶ 2).  Ronda Wilkins picked up the Volvo C70 from Roger Beasely Volvo on March 1, 2002.  (R. Wilkins Aff. ¶ 3).  Through Stein's affidavit, Plaintiffs have established that the Volvo C70 was in the exclusive

7

control of Star of Texas and Celebrate Texas.  Defendant has not provided any evidence that raises a genuine issue of material fact that the car was not in the exclusive use and control of the named insured, Star of Texas.

Nevertheless, even assuming the car was in the exclusive use and control of the Star of Texas and Celebrate Texas, Defendants argue that they are entitled to summary judgment because Roger Beasely Volvo did not give the Volvo C70 to Star of Texas in exchange for consideration.  Plaintiffs argue that Roger Beasely Volvo was given consideration in the form of advertising and as such, they should be granted summary judgment finding that Ronda Wilkins was in a "covered auto" at the time of the accident.

When asked whether Roger Beasely Volvo was acknowledged in the advertising for the 2002 parade, Lamb testified stated Roger Beasely Volvo was not mentioned in anything he was a part of because it was not an official sponsor of the Star of Texas.  (Lamb Dep. 44:9-14).  Nonetheless, Lamb testified that he did not know what Roger Beasely Volvo's arrangement was with Celebrate Texas for purposes of the parade as a whole and not just the rodeo.  (Lamb Dep 44:15-18).

Plaintiff Ed Wilkins, who was on the board of directors of Celebrate Texas Independence Day, Inc., averred that he reached an agreement with the Roger Beasely auto group to be the exclusive auto dealer for the parade.  (E. Wilkins Aff. ¶¶ 2, 6).  Wilkins further averred "[i]n exchange for advertising in the form of recognition of their sponsorship in newspaper and local television coverage, Roger Beasely Volvo provided all the automobiles used in the parade." (Pls.' Resp. Mot. Summ. J., Ex. 6 ("E. Wilkins Aff.") ¶ 4).  Stein, on behalf of Roger Beasely Volvo, averred  that the Volvo C70 was "provided to" Star of Texas and Celebrate Texas.  (Stein Aff. ¶ 2).  He further averred that Roger Beasley Volvo was a sponsor of the parade.  (*Id*.)  While Stein did not specifically attest that the Volvo C70 was given to Star of Texas and Celebrate Texas in

exchange for advertising, he agrees with Ed Wilkins that Roger Beasely was a sponsor of the parade. (*Id*.)  Further, Stein attests that the Volvo C70 was provided to Star of Texas and Celebrate Texas with the understanding that they had "adequate and sufficient insurance coverage to insure the vehicle in any event" which appears to indicate an intent to create a lessor-lessee relationship since the lessee would be responsible for insuring itself, which may not have been the case if Star of Texas and Celebrate Texas had merely borrowed the vehicle. (*Id*.)  *See Garmany v. Mission Ins. Co.*, 785 F.2d 941, 942-43 (11th Cir. 1986) (individual was an insured under the policies issued to a company that owned the vehicle and lent it to the individual for a test drive).  This evidence, along with Ed Wilkins' Affidavit, support the reasonable inference that there was a commercial motivation for Roger Beasely Volvo to "provide" the Volvo C70 to Star of Texas and Celebrate Texas.   While the undersigned recognizes that there was no monetary consideration for Star of Texas and Celebrate Texas' use of the vehicle, it would be hyper-technical to ignore the non-monetary benefit of advertising to Roger Beasley and to deny exchanges of non-cash value as a legitimate form of commercial consideration.  *See e.g. Roark v. Stallworth Oil & Gas*, 813 S.W.2d 492, 496 (Tex. 1991) (consideration consists of either a benefit to the promisor or a detriment to the promisee).  Moreover, there is no dispute that the Volvo C70 was to be used in the parade on behalf of both Celebrate Texas and Star of Texas, when they "joined together for the limited purpose of putting on a joint parade." (E. Wilkins Aff. ¶ 3).

Defendant has not controverted the evidence presented by Plaintiffs, nor has it cited any cases which indicate that the evidence before the court is not sufficient to establish the existence of a lease.   Because Defendant has failed to raise a genuine issue of fact that the agreement between Roger Beasley Volvo and Celebrate Texas/Star of Texas was not a lease, Plaintiffs are granted summary judgment on such issue.  As such, the undersigned finds that Ronda Wilkins

was an insured because she was in a "covered auto" as defined under the UM/UIM policy at the time of the accident.

### B. Was Ronda Wilkins an insured because she was an agent of a joint venture?

Plaintiffs argue that they should be granted partial summary judgment because Ronda Wilkins is an insured even if she was not in a "covered auto" under the policy.  The relevant portion of the UM/UIM policy states that an insured is: "[y]ou and any designated person and any family member of either." (Def.'s Mot. Summ. J., Ex. A).  Plaintiffs argue that Celebrate Texas and Star of Texas were engaged in a joint venture.  Because they were engaged in a joint venture, Plaintiffs further allege that Celebrate Texas and Star of Texas were agents of one another for the purposes of planning and organizing the parade.  Further, Plaintiffs assert that Ronda Wilkins was an agent of Star of Texas and as such, she was an insured under the definition described above.  Defendants argue they should be granted summary judgment because there was no joint venture.  Further, in its response to Plaintiffs' motion for partial summary judgment, Defendant argues that even if Ronda Wilkins were an agent of the named insured, Star of Texas, she was not an insured under the first classification of an insured in the UM/UIM endorsement.  *See* (Def.'s Mot. Summ. J., Ex. A)

The elements of a joint venture are: (1) an agreement, express or implied, among the members of the group, (2) a common purpose to be carried out by the group, (3) a community of pecuniary interest in that purpose, among the members, and (4) an equal right to a voice in the direction of the enterprise, which give an equal right of control.  *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 535 (Tex. 2002); *Texas Department of Transportation v. Able*, 35 S.S.3d 608, 619-20(Tex. 2000) (Owen, J., dissenting).  In its response to Plaintiffs' motion for partial summary judgment, Defendant concedes that there was a common purpose of putting on the parade to be carried out by Star of Texas and Celebrate Texas.  However, Defendant argues that there is no

evidence to support Plaintiffs' theory that there was a community of pecuniary interest in that purpose.

The undersigned finds that even if there were a joint venture and even in Plaintiff Ronda Wilkins was an agent of that joint venture, she is not an insured under the policy. The Texas Supreme Court has addressed a UM/UIM endorsement where the same definition of an insured was at issue and in which the named insured was a corporation. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455 (Tex. 1997). In *Grain Dealers*, the named insured was Future Investments, Inc. ("Future Investments"). *Grain Dealers*, 943 S.W.2d at 456. Gerald McKee was the president of Future Investments and was also the sole shareholder. (*Id.*) He asserted that the insurance policy provided coverage for his daughter, Kelly. (*Id.*) She was injured in a one-car accident while riding as a passenger in an automobile that was admittedly not covered under the policy at issue. (*Id.*) Mr. McKee argued that the policy was ambiguous because the "family member" language contained in the UM/UIM endorsements was susceptible to the interpretation that the endorsement provided coverage to for his family members since he was the president and sold shareholder of Future Investments. *Grain Dealers*, 943 S.W.2d at 457.

The Texas Supreme Court found that Mr. McKee's status as president and sole shareholder of the named insured, Future Investments, combined with the "family member" language in the UM/UIM policy did not create an ambiguity. *Id*. at 458. The Court found that it was unambiguous that Gerald McKee was not the named insured under the policy and reminded him that Future Investments was a distinct legal entity separate and apart from him. *Id*. The Court further noted that Future Investments could have named a designated person, which would have created coverage for the designee as well as the designee's family, but failed to do so. *Id*. Finally, Mr. McKee argued that any policy interpretation that denied family member status to Kelly was illusory because the policy would provide coverage to no person in the first definition of an

insured under the UM/UIM policy.  *Id*. at 459.  The Court, in rejecting that argument, noted that the second definition of an insured under the UM/UIM policy would have covered Kelly if she was riding in a covered auto.  *Id*. at 459.  In short, because Kelly did not qualify as "you" (the named insured), a "designated person" (the space was left blank), or a "family member" of the named insured (the named insured was a corporation), she was not an insured under the UM/UIM endorsement.  *Id*. at 457-59.  *See also Webster v. United States Fire Ins. Co.*, 882 S.W.2d 569, 573 (Tex. App.--Houston 1994, writ denied) ("when a corporate-employer is a named insured on a policy, the family-oriented language does not extend coverage to the corporation's employees"); *Burling v. Employers Mut. Cas. Co.*, 2005 Tex. App. LEXIS 373, *5-6 (Tex. App.--Dallas Jan. 19, 2005–no pet.) (in examining a UM/UIM policy identical to the one in *Grain Dealers* and in following the reasoning of *Grain Dealers*, an employee of the named insured, a corporation, acting in the scope of his employment at the time of the injury was not an insured because he was not the named insured nor was he named a designated person in the policy); *Navarro-Martha v. Fulkerson*, 2004 Tex. App. LEXIS 8239, *2, *9-15 (Tex. App.--Houston Sept. 9, 2004, no pet.) (where the only named insureds were a corporation and the corporation's affiliated business entities, and the individual employee of one of the affiliated business entities was not a designated person, in following *Grain Dealers*, neither the individual nor his family members were insured under such policy); *Blass v. Hanover Am. Ins. Co.*, 1999 Tex. App. LEXIS 6906, *2-*3, *8-*9 (Tex. App.--Austin Sept. 10, 1999–pet. denied) (in identical policy as *Grain Dealers* where corporation and other business entities were listed as named insured and employee of named insured was not listed as a designated person, there was no coverage for employee's family member under the UM/UIM policy).

The *Grain Dealers* decision makes clear that even if there was a joint venture and even if Ronda Wilkins was an agent of such venture, it is unambiguous that Ronda Wilkins was not the

named insured under the policy.  *See Grain Dealers*, 943 S.W.2d at 458.  Nor was she named a designated person.  *See* (Def.'s Mot. Summ. J., Ex. A).  Had Star of Texas, even operating as joint venture, wanted to extend coverage to its employees or agents it could have made such a designation.  In short, because Star of Texas, not Ronda Wilkins , is the named insured, Ronda Wilkins, unambiguously is not included in the term "you," which refers to only the named insured.  *See Grain Dealers*, 943 S.W.2d at 457-59.  Further, because Ronda Wilkins does not qualify as a "designated person" (the space was left blank), or a "family member" of the named insured (the named insured was Star of Texas, a corporation or at best a joint venture/partnership), she is not an insured under the UM/UIM endorsement.[2]  As such, Plaintiffs have failed to raise a genuine issue of material fact that Ronda Wilkins was an insured pursuant to the provision in the UM/UIM policy that an insured is "[y]ou and any designated person and any family member of either."  *See* (Def.'s Mot. Summ. J., Ex. A).  As such, Defendant is granted summary judgment on Plaintiffs' claims that Ronda Wilkins was an insured under such provision in the UM/UIM policy.

## V. CONCLUSION

The undersigned **GRANTS IN PART and DENIES IN PART** Defendant's Motion for Summary Judgment, filed November 1, 2005 as described herein (Clerk's Dkt. #18).  The undersigned **GRANTS IN PART and DENIES IN PART** Plaintiffs' Motion for Partial Summary Judgment, filed February 28, 2006 as described herein (Clerk's Dkt. #33).

SIGNED this 25th day of August, 2006.

_____
ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE

---

[2] The undersigned notes that while Plaintiffs have not advanced the argument that Ed Wilkins is an insured, the same analysis would apply to his insured status under the UM/UIM policy as well.

13